UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                                        :

THOMAS RIMINI,                       :

                                   :

              Plaintiff,          :

                                   :          22 Civ. 7768 (JPC)

          -v-                  :

                                   :          <u>OPINION AND ORDER</u>

J.P. MORGAN CHASE & CO. *et al.*,    :

                                   :

              Defendants.     :

                                   :
----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This civil action marks the latest front in a seemingly never-ending litigation campaign waged by Thomas Rimini, an attorney proceeding *pro se*, against his former employer, J.P. Morgan Chase & Co. ("JPMC"), and its affiliates. Despite that employment having ended nearly twenty years ago, Rimini has relentlessly pursued a decade of non-stop litigation in federal and state courts and before administrative agencies. In every forum, Rimini's claims have been rejected. And the Second Circuit has warned Rimini that his conduct could expose him to discipline.

      Through this action against JPMC, J.P. Morgan Securities, LLC ("JPMS"), and J.P. Morgan Chase Bank, N.A. ("JPMCB"), Rimini alleges that Defendants interfered with his attempts to seek employment at HSBC by providing negative employment references. As to his federal claims, Rimini asserts whistleblower-retaliation claims under the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") and under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), as well as a claim for violations of due process. He also asserts common law causes of action for breach of contract, breach of the implied duty of good faith, defamation, slander, and tortious interference with business relations. In response, Defendants move to dismiss each claim

for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and ask this Court to enjoin Rimini from bringing further actions against them or making further filings without the Court's permission.

None of Rimini's claims can move forward as pleaded. Like in the prior case Rimini filed in this Court, Rimini's pleadings fail to allege compliance with Sarbanes-Oxley's jurisdictional exhaustion requirements. *Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC), 2022 WL 4585651, at *4-5 (S.D.N.Y. Sept. 29, 2022). Nor does Rimini plausibly allege that Defendants retaliated against him for engaging in activity protected under Dodd-Frank or violated his due process rights. With no surviving federal causes of action, the Court declines to exercise supplemental jurisdiction over Rimini's state law claims but will *sua sponte* grant Rimini an opportunity to allege that diversity jurisdiction exists.

Finally, the Court agrees that at this point a narrow filing injunction is appropriate to prevent Rimini from bringing further retaliation claims against Defendants under Sarbanes-Oxley or Dodd-Frank in this District and from bringing further retaliation claims before the Occupational Safety and Health Administration ("OSHA"), without obtaining permission from the relevant tribunal.

## I. Background

### A. Rimini's History of Litigation Against Defendants

Rimini worked at JPMC from October 2003 to March 2006 in various roles, including as a Compliance Officer. Dkt. 1 ("Compl.") at 34. He received a Juris Doctor degree from The George Washington University Law School in 2001 and became a member of the State Bar of California. *Id.* at 30. After leaving JPMC in 2006, Rimini began a years-long litigation campaign against his former employer and its affiliates. The Court provides a non-exhaustive summary of that history below.

In November 2012—six years after his employment with the company ended—Rimini sued JPMC in the New York Supreme Court for defamation, discrimination, retaliation, breach of contract, and other common law causes of action.  Complaint ¶¶ 65-70, *Rimini v. J.P. Morgan Chase & Co.*, No. 158195/2012 (N.Y. Sup. Ct. Nov. 20, 2012), Dkt. 1; Amended Complaint ¶ 6, No. 158195/2012 (N.Y. Sup. Ct. Feb. 12, 2013), Dkt. 84.  Those allegations related to JPMC's alleged efforts to "preclude and thwart[] [Rimini's] employment" in connection with his failed attempt to rejoin the company in December 2011.  Complaint ¶ 68, No. 158195/2012 (N.Y. Sup. Ct. Nov. 20, 2012), Dkt. 1.  The state court ultimately dismissed each of Rimini's claims on the grounds that they were precluded by a 2008 settlement agreement between the parties and were otherwise either barred by the applicable statute of limitations or failed to state a cause of action.  Order, No. 158195/2012 (N.Y. Sup. Ct. Sept. 16, 2013), Dkt. 94.  Then, almost ten years after the state court had dismissed all his claims, Rimini moved for default judgment against JPMC in that case, which the court "denied as without merit."  Order, No. 158195/2012 (N.Y. Sup. Ct. Oct. 19, 2021), Dkt. 115.

Unsatisfied with the outcome of the state court proceedings, Rimini filed a whistleblower retaliation complaint against JPMC with OSHA in July 2015.  *Rimini v. J.P. Morgan Chase & Co.*, OSHA No. 2-4173-15-234.  Rimini's OSHA complaint alleged that JPMC violated Sarbanes-Oxley by retaliating against him for engaging in protected activity during his employment with the company and in connection with his 2011 efforts to seek reemployment.  *See id.*  The following month, OSHA dismissed his complaint because Rimini, who accused JPMC of discrimination based on his "medical disability" and "sexual orientation," failed to allege that JPMC retaliated against him for his participation in any "activity protected under the employee protection provisions of [Sarbanes-Oxley]."  Dkt. 63 (declaration of Defendants' counsel), Exh. C at 5.  On

September 9, 2015, Rimini objected to OSHA's dismissal of his complaint and requested a hearing on his allegations. *Id.* at 7. Eventually, Administrative Law Judge Timothy McGrath granted summary decision in favor of JPMC on January 18, 2017. *Id.* at 10, 22. Judge McGrath found that despite having had the opportunity to take discovery, Rimini's "allegations [were] beset by an obvious dearth of direct and circumstantial evidence" and that his retaliation claim consisted of "nothing more than unsubstantiated allegations and speculation." *Id.* at 22 (dismissing Rimini's whistleblower complaint with prejudice). Meanwhile, Rimini had filed another OSHA complaint in July 2016 relating to his unsuccessful efforts that month to obtain employment with HSBC, which the agency also dismissed, again for failure to present "a prima facie allegation of a [Sarbanes-Oxley] violation." *Id.* at 8. Rimini then filed three more OSHA whistleblower complaints on December 13, 2017, April 13, 2018, and April 2, 2019, each of which was dismissed or otherwise rejected. Notice of Appeal, *Rimini v. U.S. Dep't of Lab.*, No. 19-1970 (1st Cir. Sept. 26, 2019), Dkt. 1 at 9-10.

After striking out in front of OSHA, Rimini turned to federal court. On March 8, 2017, Rimini sued JPMS in the United States District Court for the District of Massachusetts, alleging claims for violations of Sarbanes-Oxley, the Americans with Disabilities Act ("ADA"), and Title VII of the Civil Rights Act, and for breach of contract. Complaint, *Rimini v. J.P. Morgan Sec. LLC*, No. 17 Civ. 10392 (LTS) (D. Mass. Mar. 8, 2017), Dkt. 1. The Honorable Leo T. Sorokin dismissed each of those claims on December 13, 2017. *Rimini v. J.P. Morgan Sec. LLC*, No. 17 Civ. 10392 (LTS), 2017 WL 6368472, at *1-2 (D. Mass. Dec. 13, 2017). As to Rimini's claim for retaliation under Sarbanes-Oxley, Judge Sorokin held that "Rimini advance[d] such allegations only in the most conclusory fashion" and "allege[d] no facts whatsoever regarding his alleged protected activity or any causal link to retaliation." *Id.* at *1. Judge Sorokin also rejected Rimini's

4

Title VII and ADA claims, explaining that Rimini's complaint was "utterly devoid of any reference to those statutes or factual allegations giving rise to even a conceivable, never mind plausible, claim." *Id.* Similarly, Judge Sorokin dismissed Rimini's breach of contract claim for failure to "allege[] sufficiently the existence of a contract that JPMS could have breached." *Id.* at *1 n.1. Finally, Judge Sorokin observed that a declaration Rimini submitted in an apparent effort to support his Sarbanes-Oxley claim in fact demonstrated that he had not properly exhausted his administrative remedies under the statute. *Id.* at *1 n.2.

Rimini countered by filing a series of appeals to the United States Court of Appeals for the First Circuit, each of which the First Circuit either rejected on the merits or dismissed.[1] In addition, Rimini filed two petitions in the First and Second Circuit Courts of Appeals seeking review of adverse decisions on his OSHA complaints by the Department of Labor, which were also rejected.[2] Rimini then followed up with two petitions for a Writ of Certiorari to the United States Supreme Court, which the Supreme Court denied.[3]

Rimini targeted this District next. On August 26, 2021, Rimini filed a civil action before this Court against JPMC, alleging once again that he had been retaliated against in violation of

---

[1] *Rimini v. JP Morgan Sec. LLC*, No. 18-1031, 2018 WL 11229124, at *2 (1st Cir. Nov. 7, 2018) (characterizing Rimini's claim that he engaged in protected activity as "unsupported by any facts describing what he did" and describing his complaint as "inadequate under any pleading standard"); Order, *Rimini v. JP Morgan Sec. LLC*, No. 19-1554 (1st Cir. Jul. 26, 2019) (dismissing Rimini's untimely appeal for lack of jurisdiction); Order, *Rimini v. JP Morgan Sec. LLC*, No. 19-2072 (1st Cir. Dec. 15, 2020) (rejecting Rimini's appeal of Judge Sorokin's refusal to seal the entire case file); Order, *Rimini v. JP Morgan Sec. LLC*, No. 19-1531 (1st Cir. Oct. 2, 2020) (affirming the district court's denial of leave to amend his complaint and denying various other motions filed by Rimini).

[2] Order, *Rimini v. U.S. Dep't of Lab.*, No. 19-1970 (1st Cir. Feb. 22, 2021); Order, *Rimini v. U.S. Dep't of Lab.*, No. 20-4003 (2d Cir. May 13, 2021).

[3] *Rimini v. Dep't of Lab.*, No. 20-1658 (U.S. May 27, 2021); *Rimini v. Dep't of Lab.*, No. 21-205 (U.S. Aug. 12, 2021).

Sarbanes-Oxley and seeking to "remov[e]" his July 2016 OSHA complaint to the Court. Complaint at 2, 5, *Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC), Dkt. 1. Rimini then moved to dismiss his own complaint for lack of subject matter jurisdiction on January 13, 2022—a motion that this Court granted, *Rimini*, 2022 WL 4585651, at *5—before appealing that very same order to the Second Circuit, *Rimini v. J.P. Morgan Chase & Co.*, No. 22-2605 (2d Cir. 2022). The Second Circuit dismissed that appeal as lacking "an arguable basis either in law or in fact" and warned Rimini that "as an officer of the court, he is to be a mindful steward of judicial resources and taxpayer dollars. As such, he is duty-bound to avoid pursuing frivolous litigation. Conduct inconsistent with these obligations may result in the imposition of discipline." Order, No. 22-2605 (2d Cir. Apr. 26, 2023), Dkt. 133 (internal quotation marks omitted).

## B. Rimini's Allegations in This Case[4]

In 2021, Rimini sought employment with HSBC. Compl. at 5. During that year, Rimini "applied to several roles" and "had several interviews" with the company. *Id.* He also received communications from HSBC relating to "employment opportunities" at the company. *Id.* Eventually, HSBC scheduled Rimini for an interview that was to take place on December 10, 2021. *Id.* But an hour before it was scheduled to begin, Rimini "received an email from Erika Corpuz stating that the interview was being cancelled." *Id.* Rimini "was then told that [he] was no longer being considered for the role because [JPMS] provided derogatory employment information about

---

[4] The following facts, which are assumed true solely for purposes of this Opinion and Order, are taken from Rimini's original Complaint in this case, which is referred to herein as "Compl." or the "Initial Complaint," Dkt. 1, and the exhibits attached thereto, as well as from his Amended Complaint, Dkt. 49 ("Am. Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor"). Because Rimini contends that his Amended Complaint incorporates the Initial Complaint by reference, *see* Am. Compl. at 1, the Court relies on both pleadings for purposes of this Opinion and Order.

[him]." *Id.*  Also, at some point prior to the December 10 interview, Corpuz had told Rimini "that there is a background check office that checks your entire employment history and especially with all employers in financial services." *Id.* at 5-6.  Rimini alleges that episodes like this "happened repeatedly" and show that he is "blacklisted by Defendants through bad employment references." *Id.* at 5.  In addition, Rimini refers to having seen "blacklisting emails" showing that "Defendants do not follow their policies and procedures for employee references," allowing their "employees to directly retaliate against [him] successfully." *Id.*

Rimini began another "hiring process" with HSBC around October 2022 for a position that comprised the same role and title he once held with JPMC.  Am. Compl. at 1.  During that process, Rimini was interviewed on at least five occasions and was informed that there would be a "very thorough background check." *Id.*  That hiring process also proved unsuccessful.  According to Rimini, "JPMorgan attorneys contacted HSBC to inform them of this litigation." *Id.* at 2.  Additionally, Defendants "made bad references [and] false statements" regarding Rimini, such as by telling HSBC that Rimini was "not eligible for reemployment," a designation that Rimini alleges "identifies an employee who was fired usually for cause and/or job performance." *Id.* at 2 & n.1.  Rimini claims that being ineligible for reemployment "is an effective bar to any reemployment in banking" and that his contacts at HSBC told him as much. *Id.* at 2.  In Rimini's view, these events reflected Defendants' "policy and procedure of retaliating against anyone who reports wrongdoing at the Bank."  Compl. at 5.  Finally, Rimini alleges that he was similarly unsuccessful in securing employment at HSBC in August 2023.  Am. Compl. at 1.

## C.  Procedural History of This Case

On December 17, 2021, Rimini filed a sixth OSHA complaint alleging a claim for retaliation under Sarbanes-Oxley.  *See* Notice of Docketing at 1 n.1, *In re Rimini*, No. 2022-SOX-

00018 (Dep't of Lab. Apr. 26, 2022).  On March 18, 2022, OSHA dismissed his complaint as untimely, and that same day Rimini appealed OSHA's dismissal to the Office of Administrative Law Judges ("OALJ").  *Id.*  On September 8, 2022, the agency affirmed OSHA's dismissal of Rimini's complaint with prejudice.  Case Status Lookup, Dep't of Lab., https://www.oalj.dol.gov/OALJ_Case_Status.html?_ga=2.87639704.166   9569687.1664376598-1002598117.1664376598 (search "2022-SOX-00018") (last visited Sept. 30, 2024).

The following day, on September 9, 2022, Rimini filed the Initial Complaint against Defendants.  Dkt. 1.  Through the Initial Complaint, Rimini asserted federal claims against Defendants for retaliation under Sarbanes-Oxley and Dodd-Frank, and for violations of "due process."  Compl. at 2.  Rimini also brought common law causes of action for defamation, slander, and tortious interference with business relations.  *Id.*  Rimini's Initial Complaint attaches dozens of pages of exhibits, including a pleading he filed with the OALJ in the underlying administrative proceedings, *id.* at 10-27, his resume, *id.* at 29-30, a number of emails, *id.* at 31, 36-41, his job profile report data, *id.* at 32-35, documents related to his prior OSHA complaints, *id.* at 42-44, 47-57, 65-75, communications related to a 2018 Freedom of Information Act request that Rimini made, *id.* at 45-46, 63-64, and documents relating to a 2021 arbitration between Rimini and JPMS before the Financial Industry Regulatory Authority ("FINRA"), *id.* at 58-62.

On November 9, 2022, Defendants moved to dismiss the Initial Complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and simultaneously moved for a filing injunction to prevent Rimini from bringing further suits without leave of Court.  Dkts. 18-19.  But before the Court could rule on those pending motions, Rimini filed two interlocutory appeals with the Second Circuit.  Dkts. 24, 25.  The Second Circuit later dismissed both of those appeals.  Order, *Rimini v. J.P. Morgan Chase & Co.*, No. 22-2941 (2d Cir. Apr. 26, 2023); Order,

*Rimini v. J.P. Morgan Chase & Co.*, No. 22-2942 (2d Cir. Apr. 26, 2023).

Then, on August 18, 2023, Rimini filed his Amended Complaint. Dkt. 49. Contending that the Amended Complaint incorporates his Initial Complaint by reference, Rimini added claims for breach of contract and breach of the implied duty of good faith based on Defendants' alleged violation of their obligation to provide neutral references to Rimini's prospective employers. *Id.* at 1-3. And, in the nature of supplemental pleading under Federal Rule of Civil Procedure 15(d), the Amended Complaint added the aforementioned allegations regarding Rimini's participation in HSBC's hiring process in October 2022 and August 2023, events that occurred after Rimini filed the Initial Complaint. *Id.* at 2-3.

On September 25, 2023, Defendants moved to dismiss the Amended Complaint for failure to state a claim for relief under Rule 12(b)(6) and again moved for a filing injunction. Dkts. 58, 59 ("Motion to Dismiss"), 60, 61, 62 ("Injunction Motion"), 63. Through a series of disjointed filings, some of which are stylized as declarations rather than briefs, Rimini opposed both motions. Dkts. 64, 66-69, 72. Defendants filed their reply briefs in support of the two motions on November 28, 2023, Dkts. 74, 75, and Rimini filed two surreplies thereafter, Dkts. 76, 77. Then, in response to an order by this Court for supplemental briefing on the question of whether Rimini had complied with the administrative exhaustion requirements of Sarbanes-Oxley, Dkt. 78,[5] the parties submitted simultaneous letter briefs on September 20, 2024. Dkts. 81, 82; *see Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope

---

[5] Specifically, the Court requested supplemental briefing on the issues of whether Rimini had exhausted the Sarbanes-Oxley claims raised in his Initial Complaint and Amended Complaint (including his post-September 2022 claims) and whether his removal of the underlying OSHA complaint to this Court complied with Sarbanes-Oxley's kickout provision. *See* Dkts. 78, 80.

of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").

## II. Jurisdiction

Before turning to the merits of Defendants' motion to dismiss, the Court must consider whether and to what extent it has jurisdiction to hear this case. *See United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) ("Subject matter jurisdiction is a 'threshold question that must be resolved . . . before proceeding to the merits.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998))). As noted, Rimini brings federal claims under Sarbanes-Oxley, under Dodd-Frank, and for violations of due process, as well as a number of state law causes of action. But for the reasons stated below, the Court lacks original jurisdiction over the Sarbanes-Oxley and state law claims. Accordingly, the Court dismisses the Sarbanes-Oxley claim without prejudice and will proceed, after evaluating Rimini's Dodd-Frank and due process claims on the merits, to determine whether to exercise supplemental jurisdiction over his state law causes of action.

## A. Rimini Fails to Allege Compliance with Sarbanes-Oxley's Jurisdictional Exhaustion Requirements.

The Second Circuit adheres to the view that Sarbanes-Oxley's administrative exhaustion requirement, 18 U.S.C. § 1514A(b)(1)(B), is not merely a claim-processing rule but is instead a "jurisdictional prerequisite" to bringing a whistleblower-retaliation claim under the statute in federal court. *Daly v. Citigroup Inc.*, 939 F.3d 415, 426-27 (2d Cir. 2019). As this Court explained in dismissing Rimini's last suit, a Sarbanes-Oxley plaintiff hoping to get into federal court "must begin by filing a complaint with OSHA 'not later than 180 days after the date on which the violation[] occur[red]' or became known," at which point the Department of Labor has exclusive jurisdiction over the claim for 180 days. *Rimini*, 2022 WL 4585651, at *4 (quoting 18 U.S.C. § 1514A(b)(1)(A), (b)(2)(D)). The purpose of filing an administrative complaint before coming to

federal court is to "afford OSHA the opportunity to resolve the allegations administratively." *Dhir v. Carlyle Grp. Emp. Co.*, No. 16 Civ. 6378 (RJS), 2017 WL 4402566, at *11 (S.D.N.Y. Sept. 29, 2017) (internal quotation marks omitted).  For that reason, only if the Secretary of Labor "still has not issued a final decision within 180 days may the plaintiff proceed to filing a claim for *de novo* review in a district court." *Rimini*, 2022 WL 4585651, at *4 (citing 18 U.S.C. § 1514A(b)(1)(B)). On the other hand, if the agency "*does* issue a timely final decision within the 180 days, the plaintiff's only recourse is to seek judicial review 'within 60 days in the United States Court of Appeals for the circuit in which the complainant resided on the date of the violation.'" *Id.* (quoting *Daly*, 939 F.3d at 427).  And as relevant here, Sarbanes-Oxley's exhaustion requirement means that a federal court cannot exercise jurisdiction unless "each separate and distinct claim was pled before [OSHA]," thereby affording the agency a full and fair opportunity to resolve the plaintiff's allegations administratively.  *Sharkey v. J.P. Morgan Chase & Co.*, 805 F. Supp. 2d 45, 53 (S.D.N.Y. 2011); *see also Fraser v. Fiduciary Tr. Co., Int'l*, No. 04 Civ. 6958 (RMB), 2005 WL 6328596, at *6 (S.D.N.Y. June 23, 2005) ("[A] plaintiff's failure to raise a claim in [an] administrative complaint with OSHA preclude[s] pursuing that claim in district court." (internal quotation marks omitted)).  When a plaintiff bringing a Sarbanes-Oxley claim in federal court has failed to abide by these procedures, dismissal of that claim for lack of subject matter jurisdiction is required. *See Daly*, 939 F.3d at 428.[6]

---

[6] Implicit in *Daly*'s holding is that district courts cannot reach unexhausted Sarbanes-Oxley claims under grants of subject matter jurisdiction separate from the statute. *See, e.g.*, 28 U.S.C. §§ 1331, 1367(a).  That implication is consistent with Sarbanes-Oxley's allocation of "initial review to an administrative body" and Congress's clear intent to thereby "preclude initial judicial review" of claims arising under the statute. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (holding that the Mine Act's "detailed structure for reviewing violations" of regulations promulgated under the statute jurisdictionally precluded otherwise-available pre-enforcement challenges).

Rimini's pleadings fail to plausibly allege compliance with Sarbanes-Oxley's jurisdictional exhaustion requirements. Rimini's Initial Complaint states that he "would like to move 2022-SOX-00018 that has been proceeding before the Department of Labor to this Court." Compl. at 5. But as Defendants point out, Dkt. 81 at 1, Rimini alleges nothing about whether the Sarbanes-Oxley claims he raised before OSHA in those proceedings are the same as (or even similar to) the ones he is attempting to bring in the instant case. *See Fraser*, 2005 WL 6328596, at *6 ("The parties have not submitted Plaintiff's original OSHA complaint, and Plaintiff has failed to allege (or persuasively argue) that he has satisfied [Sarbanes-Oxley's] exhaustion requirement . . . ."). Nor does Rimini's response to the Court's request for supplemental briefing fill in any of these gaps.[7] Indeed, Defendants are correct that Rimini's Initial Complaint appears only to identify allegedly retaliatory conduct by JPMS, whereas the docket in the underlying proceeding indicates that he directed his December 2021 OSHA complaint against JPMC alone. *See Thanedar v. Time Warner, Inc.*, No. H-06-2139, 2008 WL 8886544, at *14 (S.D. Tex. Oct. 7, 2008) ("A party who is not named in an administrative charge may not later be sued in federal court."); *compare* Compl. at 5 ("I was then told that I was no longer being considered for the role because [JPMS] provided derogatory employment information about me."), *with* Notice of Docketing at 1, *In re Rimini*, No. 2022-SOX-00018 (Dep't of Lab. Apr. 26, 2022). And while Rimini's Amended Complaint pleads additional retaliation claims based on events that occurred since October 2022, which he attributes to all Defendants, Am. Compl. at 1, it is clear that Rimini did not present (and could not have

---

[7] In response to the Court's orders for the parties to provide supplemental briefing on whether Rimini satisfied the administrative exhaustion requirements under Sarbanes-Oxley, Dkts. 78, 80, Rimini attached a December 17, 2021 email from OSHA confirming the agency's receipt of his online complaint, without revealing any information as to the content of that complaint. *See* Dkt. 82 at 5. Accordingly, the Court is unable to determine whether Rimini presented the same claims and allegations at issue in the instant matter to OSHA for administrative adjudication.

presented) those claims and allegations to OSHA through his December 2021 administrative complaint. Accordingly, because Rimini has failed to allege facts demonstrating that he administratively exhausted the Sarbanes-Oxley retaliation claims presented in his Initial Complaint and Amended Complaint, the Court dismisses those claims without prejudice for lack of subject matter jurisdiction. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (explaining that a plaintiff must allege facts that "affirmatively and plausibly" show that the Court has subject matter jurisdiction (internal quotation marks omitted)).

**B. Rimini Has Not Alleged an Independent Jurisdictional Basis for His State Law Claims.**

In addition to his federal claims, Rimini brings common law claims for breach of contract, breach of the implied duty of good faith, defamation, slander, and tortious interference with business relations under New York law. Compl. at 2; Am. Compl. at 3.

Rimini, however, pleads no independent basis for the Court to exercise subject matter jurisdiction over these claims, such as diversity jurisdiction. *See* 28 U.S.C. § 1332(a). His pleadings assert that the only ground for original jurisdiction over this case is federal question jurisdiction. Compl. at 2; *see* 28 U.S.C. § 1331. Rimini's Initial Complaint provides a Massachusetts address, but does not allege his place of domicile. Compl. at 3; *see Vekaria v. Mthree Corp. Consulting, Ltd.*, No. 22 Civ. 3197 (JPC), 2023 WL 6387275, at *5 (S.D.N.Y. Sept. 30, 2023) ("[I]t is well established that statements of a party's residence do not suffice to establish that party's citizenship."). Rimini also fails to allege the state of incorporation and principal place of business of JPMC. *See Jenkins v. Virgin Atl. Airways, Ltd.*, 46 F. Supp. 2d 271, 274 (S.D.N.Y. 1999) ("Allegations as to the state of incorporation and the principal place of business must appear on the face of the complaint lest the court erroneously exercise jurisdiction where complete diversity is lacking."). Nor does he identify each of JPMS's members and their citizenships, *see FD Special Opportunities V, LLC v. Silver Arch Cap. Partners, LLC*, No. 21 Civ 797 (JLR), 2022 WL

16837967, at *2 (S.D.N.Y. Nov. 9, 2022) ("Courts in this Circuit consistently find subject matter jurisdiction lacking where, like here, the plaintiff has not specifically alleged the identity and citizenship of each member of each relevant limited liability company."), or the location of JPMCB's main office, *see Mfrs. & Traders Tr. Co. v. HSBC Bank USA, N.A.*, 564 F. Supp. 2d 261, 263 (S.D.N.Y. 2008) ("[A] national bank's citizenship, for diversity purposes, is determined by the location of its main office.").  It is also not made clear in Rimini's pleadings whether the value of the relief he is seeking exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  Accordingly, the Court cannot exercise diversity jurisdiction over Rimini's state law claims as pleaded.  And without any alternate ground to exercise original jurisdiction over those claims, the Court can reach their merits only through an exercise of its supplemental jurisdiction.

### III.  Defendants' Motion to Dismiss

#### A.  Legal Standard

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

**B.  Analysis**

**1.  Rimini Fails to Plausibly Allege that Defendants Retaliated Against Him for Engaging in Protected Activity Under Dodd-Frank.**

Rimini principally claims that in providing negative employment references to HSBC and otherwise interfering with his efforts to obtain employment there, Defendants retaliated against him for engaging in activity protected under Dodd-Frank.  But because Rimini alleges virtually no factual support for that contention, the Court dismisses his Dodd-Frank cause of action for failure to state a claim.

Dodd-Frank protects whistleblowers against retaliation by their employers.  "The statute defines a whistleblower as an individual who provides 'information relating to a violation of the securities laws to the [SEC] . . . .'"  *Ott v. Fred Alger Mgmt., Inc.*, No. 11 Civ. 4418 (LAP), 2012 WL 4767200, at *3 (S.D.N.Y. Sept. 27, 2012) (quoting 15 U.S.C. § 78u-6(a)(6)).  And it provides that "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment" because the whistleblower provided information to the SEC, initiated or participated in an investigation or official proceeding by the SEC relating to such information, or made disclosures required by law or regulation administered by the SEC.  15 U.S.C. § 78u–6(h)(1)(A).  Accordingly, a retaliation claim under Dodd-Frank requires the plaintiff to plead: "(1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered an adverse employment action, and (3) that the adverse action was causally connected to the protected activity."  *Ott*, 2012 WL 4767200, at *4.

Rimini's pleadings do not allege each of the necessary elements of a Dodd-Frank retaliation claim.  He complains that Defendants "blacklisted" him from the financial industry and provided negative employment references to HSBC to prevent him from being hired.  Compl. at 5-6; Am. Compl. at 2-3.  And he says that those actions "violate . . . Dodd-Frank."  Am. Compl. at 3.  Rimini's

pleadings, however, contain no facts indicating that he engaged in protected activity under the statute. He does not, for example, allege that he provided information to the SEC. Nor does he allege that he initiated or participated in any covered investigations or proceedings. The only information regarding protected activity in Rimini's pleadings are two lines in an exhibit to Rimini's Initial Complaint, which state that Administrative Law Judge Jonathan Calianos was "going to make a finding for [his] purposes that [Rimini] engaged in protected activity" and that "JPMC has been obsessed and preoccupied with this litigation because [of] reports I made involving the same statutes subject of JPMC's recent 200 million dollar settlement with the SEC and CFTC." Compl. at 19, 25. These vague allegations leave the Court (and Defendants, who must respond) to guess at what supposedly protected activity Rimini's Dodd-Frank claim relies on. Even construed in the most generous light possible, these fragmentary allegations fail to indicate what activity Rimini engaged in that is protected under Dodd-Frank. But a party cannot escape dismissal by hiding behind vague assertions and innuendos. Instead, to state a claim for relief, a complaint must—in a "simple, concise, and direct" manner, Fed. R. Civ. P. 8(d)(1)—supply plausible factual support for every element of the cause of action. And even if Rimini's unsupported assertion that he engaged in protected activity was sufficient, the Initial and Amended Complaints also fail to supply any facts whatsoever to show that Defendants' actions were motivated in part by that protected activity, the nature of which, again, is nowhere revealed in Rimini's pleadings. In sum, the facts alleged in Rimini's pleadings do not plausibly show that Defendants retaliated against him for engaging in protected activity.

For these reasons, the Court dismisses Rimini's Dodd-Frank retaliation claim for failure to state a claim.

**2. Rimini Fails to Plausibly Allege a Due Process Claim.**

Rimini also brings a "due process" claim against Defendants. Compl. at 2. Rimini's

pleadings do not expand on the meaning of this claim other than to cryptically state that "[b]ecause other actions within this matter have proceeded piecemeal, [his] due process rights under the statutes have been violated." *Id.* at 5. Like his Dodd-Frank claim, Rimini's "due-process" allegations violate elementary notice-pleading standards, which require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (noting that Rule 8 requires "the statement of circumstances, occurrences, and events in support of the claim presented" (internal quotation marks omitted)). Rimini's vague reference to "due process rights under the statutes," like his bare allegation that he was retaliated against for engaging in protected activity under Dodd-Frank, leaves the Court (and Defendants) utterly in the dark as to the nature of his claim. *See Twombly*, 550 U.S. at 555 (explaining that a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (internal quotation marks omitted)). In his briefing, Rimini characterizes this case as a "civil rights issue" to which "due process applies." Dkt. 66 at 5. He also suggests that his due process claim has to do with the procedures employed by OSHA in adjudicating his whistleblower complaint and throws in a stray reference to the Administrative Procedure Act for good measure. *Id.* But neither Rimini's pleadings nor his briefs provide any hint as to what procedural violations Rimini is referring to, let alone any factual support for holding *Defendants* liable for any such irregularities through this civil action. And to the extent that, as Defendants guess, Rimini's "due process" claim arises under the U.S. Constitution, the claim is entirely without merit because it is directed at private entities as to whom Rimini's allegations provide no factual or legal basis for imputing any state action. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (describing three narrow situations in which a private entity qualifies as a state actor).

Accordingly, the Court dismisses Rimini's due process claim.

### 3. The Court Declines to Exercise Supplemental Jurisdiction Over Rimini's State Law Claims.

Defendants argue that Rimini's state law claims for breach of contract, breach of the implied duty of good faith, defamation, slander, and tortious interference with business relations must be dismissed for failure to state a claim under Rule 12(b)(6). Motion to Dismiss at 4. Because the Court lacks original jurisdiction over these claims, the only basis for the Court to reach the merits of those causes of action would be by exercising its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Under the circumstances, the Court declines to do so.

It is well established that a district court's exercise of supplemental jurisdiction is discretionary, not mandatory. *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 263 (2d Cir. 2006) ("Because the decision to retain jurisdiction is discretionary and not a litigant's right, a court is not required either to accept or decline supplemental jurisdiction . . . ."). A district court "may decline to exercise supplemental jurisdiction" if, among other reasons, "the district court has dismissed all claims over which it has original jurisdiction" or the pendent state law claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). For those reasons, it is usually improper for a district court to exercise supplemental jurisdiction "where the federal claims [have] been dismissed at a relatively early stage" of the litigation. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003); *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) (observing that the dismissal of all federal causes of action from a complaint "will usually result in the dismissal of the state-law claims"); *Klein & Co. Futures*, 464 F.3d at 262 ("It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."). Similarly, if "a state claim

constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 439 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966)). In the absence of "exceptional circumstances," district courts should therefore "abstain from exercising pendent jurisdiction" when all of the federal claims in a case have been dismissed. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986).

This case is a poor candidate for supplemental jurisdiction. As described above, each of Rimini's federal causes of action has been dismissed and, as to the federal claims over which jurisdiction exists, they are woefully lacking in factual substance and legal merit. This litigation, moreover, is still at an early stage, and the case is nowhere near trial-ready. As a result, there is little risk of unfairness or undue prejudice to the parties from declining to exercise supplemental jurisdiction over Rimini's state law claims. And in the absence of a colorable federal claim or otherwise-apparent federal interest, considerations of federal-state comity further militate against exercising jurisdiction here.

The Court therefore declines to exercise supplemental jurisdiction over Rimini's breach of contract, implied duty of good faith, defamation, slander, and tortious interference claims, and dismisses those causes of action without prejudice.

### 4. The Court Grants Leave to Amend.

Under the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Rimini has already amended his pleading once and has not requested leave to file an additional amended complaint, "a court has the discretion to grant leave to amend *sua sponte*" in the interests of justice. *Khodeir v. Sayyed*, 323 F.R.D. 193, 197 (S.D.N.Y. 2017) (internal quotation marks omitted). Given that the Court has dismissed Rimini's state law causes of action for lack of subject matter jurisdiction and without

reaching the merits of those claims, the Court will provide Rimini one—and only one—opportunity to amend his pleading to bring his state law claims within the Court's original jurisdiction. *See Shields v. Murdoch*, 891 F. Supp. 2d 567, 587 (S.D.N.Y. 2012) (observing that "courts in this Circuit 'generally afford an opportunity for amendment of the pleadings to cure defective jurisdictional allegations unless the record clearly indicates that the complaint could not be saved by any truthful amendment'" (quoting *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 65 (2d Cir. 2009))); *cf. Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) (expressing this Circuit's "clear preference . . . for cases to be adjudicated on the merits").

That grant of leave to amend, however, is subject to the following conditions. First, the Court's grant of leave to amend the Initial and Amended Complaints' jurisdictional allegations is limited to alleging diversity jurisdiction with respect to Rimini's state law causes of action. Because this is the fourth time that a court (and second time that this Court) has held that Rimini has failed to satisfy Sarbanes-Oxley's administrative exhaustion requirements, the Court does not give Rimini leave to replead jurisdiction under that statute.[8] Second, if Rimini chooses to replead, he must do so by filing a single, fully integrated complaint, with any relevant exhibits attached to that pleading. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). In other words, Rimini may not incorporate by reference any of his other filings or exhibits in this or other cases. And absent good cause shown, the Court will not allow Rimini to supplement his factual allegations through any later-filed affidavits,

---

[8] For clarity, because the Court dismisses Rimini's Sarbanes-Oxley claim without prejudice, he is not precluded from reinstating that claim through a new action, assuming he is able to comply with the terms of the filing injunction the Court imposes. *See infra* IV.B.6.

declarations, or other documents.  Third, in filing a second amended complaint, Rimini may amend or supplement the substantive factual allegations in his existing pleadings only to the extent necessary to conform his complaint to the requirement of filing a single integrated pleading and, if he wishes, to address the substantive challenges to his state law causes of action raised in Defendants' motion to dismiss.  To be clear, the Court's grant of leave to amend does not allow Rimini to replead any of his federal causes of action or the jurisdictional bases thereof, add any new causes of action, or add claims or allegations involving any transactions or occurrences other than those described in the Initial Complaint and Amended Complaint.  If Rimini fails to abide by any of these conditions, the Court may, either *sua sponte* or on Defendants' motion, strike Rimini's second amended complaint or any offending portions thereof.

### IV.  Defendants' Motion for a Filing Injunction

In addition to seeking dismissal of this case, Defendants request a filing injunction to "enjoin Rimini from instituting any new action against Defendants or filing any document with the Court without first obtaining prior permission from this Court."  Injunction Motion at 16.  While Defendants' request for a broad injunction is understandable, for the reasons explained below the Court concludes that a narrower filing injunction, one limited to claims for retaliation in violation of Sarbanes-Oxley's and Dodd-Frank's whistleblower-protection provisions, is appropriate at this time.

### A.  Legal Standard

Defendants seek a filing injunction pursuant to this Court's authority under the All Writs Act, which empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  *Woodhouse v. Meta Platforms, Inc.*, 704 F. Supp. 3d 502, 513 (S.D.N.Y. 2023) (quoting 28 U.S.C. § 1651(a)).  The

Second Circuit has long held that a court's authority under Section 1651(a) includes the power to enjoin vexatious litigants from further abusing the judicial process. *See, e.g.*, *In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) (per curiam) ("The equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs [Act]."). Indeed, quite apart from the statutory prerogative guaranteed by the All Writs Act, "[f]ederal courts have both the inherent authority and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984); *see also Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." (citing *In re Martin-Trigona*, 737 F.2d at 1254)). Guarding against abuse of the judicial process is therefore not just a question of ensuring fairness to the parties, but a matter of protecting the very functioning of the courts.

At the same time, courts must remain "mindful of the gravity" of restricting a litigant's free access to the courts. *Woodhouse*, 704 F. Supp. 3d at 518. Accordingly, filing injunctions "must be narrowly tailored so as to preserve the litigant's right of access to the court." *Anghel v. N.Y. State Dep't of Educ.*, 15 Civ. 5914 (SJF), 2016 WL 183540, at *4 (E.D.N.Y. Jan. 14, 2016); *see also Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996) (per curiam) (emphasizing that filing injunctions "must be appropriately narrow"); *SBC 2010-1, LLC v. Morton*, 552 F. App'x 9, 12 (2d Cir. 2013) (affirming a "narrowly crafted" filing injunction); *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993) ("[T]he scope of [a filing injunction] must be narrowly tailored to fit the particular circumstances of the case before the District Court.").

Under these principles, a filing injunction is appropriate when "a litigant who has a history

of vexatious litigation is likely to continue to abuse the judicial process and harass other parties."

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019) (citing *Safir v. U.S. Lines, Inc.*,

792 F.2d 19, 24 (2d Cir. 1986)); *see also Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005)

("If a litigant has a history of filing vexatious, harassing, or duplicative lawsuits, courts may

impose . . . restrictions on future access to the judicial system." (internal quotation marks omitted)).

In making that determination, courts rely on the five factors identified by the Second Circuit in

*Safir*:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious,
> harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation,
> e.g., does the litigant have an objective good faith expectation of prevailing?; (3)
> whether the litigant is represented by counsel; (4) whether the litigant has caused
> needless expense to other parties or has posed an unnecessary burden on the courts
> and their personnel; and (5) whether other sanctions would be adequate to protect
> the courts and other parties.

*Iwachiw v. N.Y. State Dep't of Motor Vehicles,* 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir*,

792 F.2d at 24); *see, e.g.*, *Manchanda v. Walsh*, No. 23 Civ. 7637 (NRB), 2024 WL 455204, at *6

(S.D.N.Y. Feb. 5, 2024) (finding that the *Safir* factors justified imposing a filing injunction against

a vexatious litigant). But unlike in the case of traditional injunctive relief, a defendant's request for

a filing injunction need not be supported by a showing of irreparable harm or the lack of an adequate

remedy at law. *In re Martin-Trigona*, 737 F.2d at 1262.

## B. Analysis

Defendants argue that all five *Safir* factors weigh in favor of imposing a filing injunction

against Rimini. Injunction Motion at 14-16. The Court agrees.

### 1. Rimini Has a Clear and Considerable History of Engaging in Vexatious Litigation.

As the Court previously observed, Rimini has a long and well-documented history of filing

vexatious lawsuits against Defendants. *See Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209

(JPC), 2024 WL 809890, at *1 (S.D.N.Y. Feb. 27, 2024) ("Plaintiff Thomas Rimini . . . has

engaged in seemingly endless litigation against his former employer, Defendant J.P. Morgan Chase & Co."). By this Court's tally, Rimini's crusade against Defendants in federal and state court alone has included at least: one New York state case,[9] one District of Massachusetts case,[10] two cases in this District,[11] four appeals to the First Circuit Court of Appeals,[12] five appeals to the Second Circuit Courts of Appeals,[13] two petitions for review of agency action in the First and Second Circuit Courts of Appeals,[14] and two petitions for certiorari to the United States Supreme Court.[15] Defendants are also correct to emphasize Rimini's extensive record of litigating against them before administrative agencies and other regulatory bodies, including through six OSHA complaints,[16] six appeals to the OALJ,[17] four appeals to the Department of Labor's Administrative

---

[9] *Rimini v. J.P. Morgan Chase & Co.*, No. 158195/2012 (N.Y. Sup. Ct. Nov. 20, 2012).

[10] *Rimini v. J.P. Morgan Sec. LLC*, No. 17 Civ. 10392 (D. Mass. Mar. 8, 2017).

[11] *Rimini v. J.P. Morgan Chase & Co.,* No. 22 Civ. 7768 (JPC) (S.D.N.Y. Sept. 9, 2022); *Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC) (S.D.N.Y. Aug. 26, 2021).

[12] *Rimini v. J.P. Morgan Sec. LLC*, No. 19-1554 (1st Cir. June 14, 2019); *Rimini v. J.P. Morgan Sec. LLC*, No. 19-2072 (1st Cir. Oct. 28, 2019); *Rimini v. JP Morgan Sec. LLC*, No. 19-1531 (1st Cir. June 4, 2019); *Rimini v. J.P. Morgan Sec. LLC.*, No. 18-1031 (1st Cir. Jan. 12, 2018).

[13] *Rimini v. J.P. Morgan Chase & Co.*, No. 22-2605 (2d Cir. Oct. 14, 2022); *Rimini v. J.P. Morgan Chase & Co.*, No. 22-2941 (2d Cir. Nov. 16, 2022); *Rimini v. J.P. Morgan Chase & Co.*, No. 22-2942 (2d Cir. Nov. 16, 2022); *Rimini v. J.P. Morgan Chase & Co.*, No. 21-2719 (2d Cir. Oct. 28, 2021); *Rimini v. J.P. Morgan Chase & Co.*, No. 24-757 (2d Cir. Mar. 26, 2024).

[14] *Rimini v. U.S. Dep't of Lab.*, No. 19-1970 (1st Cir. Sept. 26, 2019); *Rimini v. U.S. Dep't of Lab.*, No. 20-4003 (2d Cir. Nov. 13, 2020).

[15] *Rimini v. Dep't of Lab.*, No. 20-1658 (U.S. May 27, 2021); *Rimini v. Dep't of Lab.*, No. 21-205 (U.S. Aug. 12, 2021).

[16] Notice of Docketing at 1 n.1, *In re Rimini*, No. 2022-SOX-00018 (Dep't of Lab. Apr. 26, 2022).

[17] *In re Rimini*, No. 2022-SOX-00018 (Dep't of Lab. Mar. 18, 2022); *In re Rimini*, No. 2021-SOX-00020 (Dep't of Lab. May 14, 2021); *In re Rimini*, No. 2019-SOX-00033 (Dep't of Lab. Apr. 22, 2019); *In re Rimini*, No. 2018-SOX-00023 (Dep't of Lab. Apr. 23, 2018); *In re Rimini*, No. 2018-SOX-00010 (Dep't of Lab. Jan. 19, 2018); *In re Rimini*, No. 2015-SOX-00034 (Dep't of Lab. Sept. 16, 2015).

Review Board,[18] and one FINRA arbitration.[19]  Rimini's claims have been rejected on various grounds by every tribunal to consider them, and especially troubling to the Court is that judges have found many of Rimini's filings to be borderline frivolous, duplicative of prior cases, made in bad faith, or to contain potentially false representations.[20]  And in at least one of Rimini's cases, the court had to direct the Clerk of Court to stop accepting further filings.[21]

As this record shows, the evidence of Rimini's bad-faith pursuit of repetitive, baseless

---

[18] Order, *In re Rimini*, ARB No. 2017-0026, ALJ No. 2015-SOX-00034 (ARB Mar. 30, 2017); Order, *In re Rimini*, ARB Nos. 2018-0039, 2018-0070 & 2019-0073, ALJ Nos. 2018-SOX-00010, 2018-SOX-00023 & 2019-SOX-00033 (ARB Jul. 31, 2019).

[19] Compl. at 58-62.  In their motion, Defendants also claim that Rimini filed a discrimination charge with the Equal Employment Opportunity Commission.  Injunction Motion at 2.

[20] *See, e.g.*, Order, *Rimini v. J.P. Morgan Chase & Co.*, No. 22-2605 (2d Cir. Apr. 26, 2023) (dismissing Rimini's appeal as "lack[ing] an arguable basis either in law or in fact" and warning him to "avoid pursuing frivolous litigation"); Order, *In re Rimini*, No. 2022-SOX-00018 (Dep't of Lab. Sept. 8, 2022) (Calianos, J.) ("I also found, even after giving Rimini additional time to substantiate the Complaint pending before me, that he failed to meet even the most basic pleading requirements that are necessary to give [JPMC] notice of what it allegedly did wrong."); Order, *In re Rimini*, No. 21-01831 (FINRA Apr. 13, 2022) (dismissing Rimini's claims with prejudice and explaining that "the claim at issue [had] previously been litigated and disposed of"); Order, *Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC) (S.D.N.Y. Mar. 18, 2022), Dkt. 58 (denying Rimini leave to amend on the basis of his "bad faith in bringing the Motion"); Judgment at 2, *Rimini v. JP Morgan Sec. LLC*, No. 19-1970 (1st Cir. Feb. 22, 2021) (rejecting Rimini's petition for review as "plainly meritless," observing that "Rimini has been litigating largely the same issues in this court and elsewhere for years," and criticizing Rimini for "submitting a steady stream of motions and notices in this and other appeals filed in this court, effectively deflecting attention" from the "central issue" of the case); *Rimini v. JP Morgan Sec. LLC*, No. 18-1031, 2018 WL 11229124, at *2 (1st Cir. Nov. 7, 2018) (holding that Rimini's allegations were "inadequate under any pleading standard"); Order, *In re Rimini*, 2015-SOX-00034 (Dep't of Lab. Mar. 8, 2016) (McGrath, J.) ("[Rimini]—regardless of intent or lack thereof—distorts my statements or worse, fabricates them. . . .  I caution [Rimini]—who indicated in his OSHA complaint that he is an attorney—not to cross the line between zealous advocacy and the dangerous territory of distortion and fabrication."); Order, *Rimini v. J.P. Morgan Chase & Co.*, No. 158195/2012 (N.Y. Sup. Ct. Oct. 19, 2021), Dkt. 115 (denying as "without merit" Rimini's motion for default judgment made almost a decade after the court dismissed his claims).

[21] *See, e.g.*, Order, *Rimini v. J.P. Morgan Sec. LLC*, No. 19-1554 (1st Cir. Mar. 30, 2021) ("The Clerk of Court is directed not to accept any further filings in this closed case.").

litigation against Defendants is strongest with respect to his claims based on whistleblower retaliation. Over the years, Rimini has filed at least six whistleblower retaliation complaints with OSHA and even more futile administrative appeals. Including this case, Rimini has also filed three civil actions in federal court alleging that he was retaliated against for engaging in protected activity, as well as two petitions for review in the Courts of Appeals relating to his administrative whistleblower complaints. Rimini's claims for retaliation have been rejected every time, including for failure to allege or prove that he engaged in protected activity or that there is any causal link at all between his supposed participation in protected activity and adverse actions taken by Defendants. *See, e.g.*, *Rimini*, 2017 WL 6368472, at *1 ("Rimini advances [Sarbanes-Oxley] allegations only in the most conclusory fashion; he alleges no facts whatsoever regarding his alleged protected activity or any causal link to retaliation."); Order, *In re Rimini*, No. 2022-SOX-00018 (Dep't of Lab. Sept. 8, 2022) (Calianos, J.) ("I also found, even after giving Rimini additional time to substantiate the Complaint pending before me, that he failed to meet even the most basic pleading requirements that are necessary to give [JPMC] notice of what it allegedly did wrong."). In addition, this case marks at least the fourth time that a court has held that Rimini has failed to demonstrate adherence to Sarbanes-Oxley's basic exhaustion requirements, including the requirement to abide by the statute's limitations period. *See supra* II.A (explaining that Rimini failed to allege that he presented his retaliation claims in this case to OSHA); *Rimini*, 2022 WL 4585651, at *5 (holding that Rimini "failed to satisfy the administrative exhaustion requirements with respect to his 2016 OSHA Complaint"); *Rimini*, 2017 WL 6368472, at *1 n.2 (explaining that a declaration that Rimini himself provided in support of his retaliation claim demonstrated that the claim was untimely); *Rimini v. JP Morgan Sec. LLC*, No. 18-1031, 2018 WL 11229124, at *2 (1st Cir. Nov. 7, 2018) (rejecting as "meritless" Rimini's argument that he complied with Sarbanes-

Oxley's exhaustion requirements). This pattern of repetitive, baseless retaliation claims weighs strongly in favor of a filing injunction against further claims of that nature. *See In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("[T]he normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints."); *Manchanda*, 2024 WL 455204, at *7 (finding that the first *Safir* factor "weigh[ed] decisively in favor of issuing a filing injunction" given the plaintiff's "well-established pattern and practice of instituting frivolous lawsuits").

By contrast, the record is more muted with respect to the common law causes of action that Rimini has asserted in this case. To be sure, this is not the first time that Rimini has asserted claims like these against Defendants. In his 2012 state court action, Rimini asserted defamation and breach of contract claims in connection with his attempts to seek reemployment at JPMC in 2011, which the court rejected in a two-paragraph order. Order, No. 158195/2012 (N.Y. Sup. Ct. Sept. 16, 2013), Dkt. 94. Rimini also pursued a breach of contract claim in his 2017 action in the District of Massachusetts based on events that occurred in 2011, which the court dismissed on the ground that Rimini's complaint had "not alleged sufficiently the existence of a contract that JPMS could have breached." *Rimini*, 2017 WL 6368472, at *1 n.1. But those two actions, five years apart, pale in comparison to Rimini's unflagging pursuit of meritless claims for retaliation under federal statutes like Sarbanes-Oxley. Indeed, the record reveals that Rimini brought such retaliation claims on an almost yearly basis between 2015 and 2022. Without more, and given that the Court does not reach the merits of Rimini's instant state law claims, the Court is reluctant to conclude at this time that those claims are part of the same pattern of vexatious litigation as his whistleblower-retaliation claims.

**2.  Rimini Lacks an Objective Good Faith Expectation of Prevailing on His Retaliation Claims.**

The Court finds that, at least as to claims for retaliation based on federal whistleblower-protection statutes like Sarbanes-Oxley and Dodd-Frank, Rimini cannot have an objective good faith expectation of prevailing in a future case because his claims for retaliation have repeatedly and consistently been found to lack merit in previous cases, as well as in this case.  *See Sunnen v. N.Y. State Dep't of Health*, No. 17 Civ. 1014 (VSB), 2018 WL 9342803, at *2-3 (S.D.N.Y. Oct. 10, 2018) ("Given the history of failed claims, Plaintiff does not have an objective good faith expectation of prevailing in a future action.").  In other words, Rimini's "[c]ontinued reliance on causes of action which have been found meritless precludes a finding of a good faith expectation on [Rimini]'s part that he could prevail in this suit."  *Manchanda*, 2024 WL 455204, at *7.  Instead, Rimini's repeated failure to make a good faith effort to respect the statute's substantive and jurisdictional requirements and demonstrated inability to learn from his prior missteps in asserting such claims leaves the Court with a firm conviction that he cannot reasonably expect to prevail on similar retaliation claims in the future.  Accordingly, the Court finds that Rimini's lengthy history of baseless and failed actions against Defendants under whistleblower-protection statutes like Sarbanes-Oxley and Dodd-Frank weighs in favor of a filing injunction as to those causes of action.

The Court, however, hesitates to conclude at this time that Rimini can have no good faith basis to believe that he could ever prevail against Defendants on *any* claim, such as the common law claims he asserts in this case.  Although, as discussed above, Rimini has unsuccessfully raised claims for defamation and breach of contract before, the claims in this case are different.  They relate to events that took place in December 2021 and from October 2022 onward in connection with Rimini's attempts to secure employment at HSBC.  Rimini alleges that in communicating with HSBC around those times, Defendants breached the terms of a contract that purportedly limited the

types of information that Defendants could provide in response to inquiries from Rimini's prospective employers. Am. Compl. at 1-3. Rimini also asserts claims for defamation and tortious interference with business relations based on the same events. Compl. at 2, 5-6; Am. Compl. at 1-3. As far as the Court can tell, these claims relate to a different set of transactions or occurrences than Rimini's prior civil suits against Defendants. And, in contrast to Rimini's federal claims for retaliation, there is no similarly long line of authority demonstrating the frivolity of Rimini's state law claims, at least as to claims based on the conduct alleged in the Initial Complaint and Amended Complaint in this matter. Although claims premised on arguably similar theories were rejected in 2012 and 2017, the Court hesitates to conclude based on those two examples that Rimini should be permanently enjoined from bringing such claims in the future. Indeed, given that the Court does not reach the merits of Rimini's state law claims in this case and has granted Rimini limited leave to replead them, it would be inappropriate for the Court to effectively prejudge the merits of those claims in ruling on Defendants' request for a filing injunction.

### 3.  As an Experienced Attorney, Rimini Is Not Entitled to Special Solicitude.

Although he appears *pro se*, Rimini is an experienced attorney, having graduated from The George Washington University Law School in 2001, and has represented himself in all of the actions he has initiated since his first lawsuit against Defendants in 2012. *Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC), Dkt. 72 at 25. As the Court noted earlier this year in one of its prior opinions involving Rimini:

> A district court typically affords special solicitude to a *pro se* litigant, which can consist of liberal construction of pleadings, motion papers, and appellate briefs. But the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented. The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all.

*Rimini*, 2024 WL 809890, at *3 (cleaned up) (citing *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d

Cir. 2010)); *accord Manchanda v. Reardon*, No. 23 Civ. 9292 (JPC), 2024 WL 382116, at *4 (S.D.N.Y. Feb. 1, 2024)).  Rimini's status as a lawyer himself, along with his extensive litigation experience in various courts and agencies dating back over a decade, cuts against the notion that he is entitled to "special solicitude" as a *pro se* litigant and weighs in favor of issuing a filing injunction.

### 4. Rimini's Conduct Has Unjustifiably Burdened Defendants and the Courts.

Rimini's relentless litigation—most of which, again, consists of baseless whistleblower-retaliation claims—has caused Defendants to incur significant costs in time, resources, and energy spent defending against his claims.  Although the record does not establish the costs, in counsel fees incurred by Defendants or in the cumulative time spent by their lawyers and by judges addressing Rimini's baseless claims, it is certainly not an insubstantial amount.  *See Woodhouse*, 704 F. Supp. 3d at 516 (finding that the plaintiff's extensive history of litigation "forced defendants to incur needless expenses defending against duplicative baseless suits brought in three federal district courts and in one state trial court and on appeal," even where the "record [did] not establish the pricetag in counsel fees and costs").  Moreover, Rimini's persistence in pursuing these frivolous claims, in spite of being warned by the Second Circuit that such conduct may lead to the "imposition of discipline," further highlights the need for a filing injunction barring him from continuing to bring similar causes of action.

Rimini's meritless and often duplicative retaliation claims have also imposed substantial burdens on the courts and other adjudicative bodies.  Indeed, not fully captured by the raw number of cases filed is the veritable torrent of frivolous motions, requests for reconsideration or rehearing, and other filings that Rimini has flooded courts and agencies with at every opportunity.  Rimini's litigation practices unjustifiably burden the tribunals that must process and consider each of his

myriad lawsuits and filings, and on other litigants whose cases languish while judges devote scarce time and attention to dealing with Rimini's filings.  *See id.* ("The public's legitimate claims on the finite time, attention, and resources of federal and state courts are undermined when such courts are diverted to dousing vexatious lawsuits.").

Rimini's litigation before this Court has been no exception.  During the pendency of the instant case alone, Rimini has filed the following: (1) two interlocutory appeals to the Second Circuit, Dkts. 24-25; (2) a Motion for Subpoena or Pause, Dkt. 15; (3) two Motions to Strike Defendants' Motion to Dismiss and accompanying memorandum, Dkt. 20, 22; (4) a Motion for Reconsideration, Dkt. 23; and (5) a Motion for Recusal from This and All Matters Between the Parties, Dkt. 37.  All of these appeals and motions have been denied.  And in what was a particularly egregious waste of judicial resources and abuse of the judicial process, Rimini previously filed a Sarbanes-Oxley claim before this Court, moved to dismiss his own complaint for lack of subject matter jurisdiction, and then appealed (and later sought rehearing *en banc*) of this Court's order granting his own motion.  The Second Circuit has made clear that Rimini's continued pursuit of frivolous litigation may lead to the imposition of discipline.  Order, *Rimini v. J.P. Morgan Chase & Co.*, No. 22-2605 (2d Cir. Apr. 26, 2023), Dkt. 133 ("Appellant is reminded that as an officer of the court, he is to be a mindful steward of judicial resources and taxpayer dollars.  As such, he is duty-bound to avoid pursuing frivolous litigation.  Conduct inconsistent with these obligations may result in the imposition of discipline."); Dkt. 45 (mandate of the Court of Appeals).

Therefore, this factor also weighs strongly in favor of issuing a filing injunction.  *See Manchanda*, 2024 WL 455204, at *8 (finding that the plaintiff's extensive litigation history, which caused the parties he sued to incur significant costs and imposed considerable burdens on the

courts, weighed in favor of issuing a filing injunction).

### 5. A Filing Injunction Is an Appropriate Remedy in This Case.

Finally, the Court concludes that a filing injunction is an appropriate remedy to guard against further abuses of the judicial and administrative system by Rimini.  Despite repeated, forceful rejections of his prior retaliation claims and stern warnings to avoid burdening the courts with vexatious filings, Rimini has showed little sign of slowing down.  For example, just a couple months after the Second Circuit admonished Rimini to "be a mindful steward of judicial resources" and warned him to "avoid pursuing frivolous litigation," Rimini filed a largely incoherent motion under Civil Rule 60(b) asking this Court to reconsider (for a second time) its order granting Rimini's own motion to dismiss his 2021 action for failure to comply with Sarbanes-Oxley's jurisdictional exhaustion requirements.  Motion, *Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC), Dkt. 104.  This Court rejected that motion as "wholly lack[ing] merit."  Opinion and Order at 1, No. 21 Civ. 7209 (JPC), Dkt. 107.  Simply put, Rimini "has not given the Court any reason to believe that he will suddenly become a model litigant after failing to do so for" over a decade, or that lesser sanctions would suffice to "dissuade [him] from continuing with his vexatious behavior."  *Schuster v. Charter Commc'ns, Inc.*, No. 18 Civ. 1826 (RJS), 2021 WL 1317370, at *10 (S.D.N.Y. Apr. 8, 2021).  Instead, Rimini appears determined to relitigate claims and arguments that have been rejected time and time again and seems unwilling or unable to abide by the basic standards of conduct that are expected of any litigant.  Accordingly, the Court finds that a filing injunction is warranted.

### 6. The Court Issues a Limited Filing Injunction.

As noted, Defendants seek a broad injunction to prevent Rimini from filing any new actions or documents against them without this Court's prior permission.  Injunction Motion at 16.  But for

the reasons described above, the *Safir* factors most strongly weigh in favor of a filing injunction with respect to Rimini's whistleblower-retaliation claims. The Court, therefore, concludes that starting with a more limited filing injunction, one directed at Rimini's claims for retaliation based on protected activity under Sarbanes-Oxley and Dodd-Frank, is warranted under the circumstances. *See Schuster*, 2021 WL 1317370, at *10 (tailoring a filing injunction to "properly capture[] the main focus of [the plaintiff's] complaints against [the defendants]"); *see also Safir*, 792 F.2d at 25 (holding that a filing injunction that "preclude[d] [the plaintiff] from instituting any action whatsoever" was "overly broad" and could therefore risk "foreclos[ing] what might be a meritorious claim"). The Court emphasizes, however, that its decision to begin with a narrow filing injunction does not in any way relieve Rimini of his continuing obligation to avoid pursuing frivolous litigation against Defendants more broadly. Nor are Defendants precluded from seeking additional sanctions in response to further filings on Rimini's part that are inconsistent with that obligation. Finally, the Court warns Rimini that it may revisit the scope of this injunction in response to further vexatious or abusive conduct on his part.

The Court also declines to extend the geographic scope of its injunction nationwide, as Defendants' motion appears to request. *See* Injunction Motion at 1 (requesting an injunction to prevent Rimini "from commencing any new action against Defendants, or filing any document without first obtaining prior express permission from this Court"). Instead, the Court limits the scope of its filing injunction, with respect to federal court filings, to new civil actions brought in this District. Although Rimini has also pursued retaliation claims in the District of Massachusetts, he filed his last (and only) case in that jurisdiction over seven and a half years ago, and the courts in that District are well-equipped to respond to any future attempt by Rimini to return there. Consistent with Rimini's litigation history and the focus of this injunction on his whistleblower

claims, however, the Court also extends the injunction to new Sarbanes-Oxley retaliation complaints filed with OSHA.  Although abuse of the administrative adjudicatory process does not represent a "*per se* [] threat to the jurisdiction of Article III courts," it nevertheless "implicate[s] other federal interests," namely the ability of federal agencies to serve their function of efficiently resolving disputes related to their areas of expertise.  *In re Martin-Trigona*, 737 F.3d at 1263; *see, e.g.*, *Schuster*, 2021 WL 1317370, at *1, 10-11 (extending a filing injunction to filings with administrative agencies after the plaintiff brought two unsuccessful OSHA complaints, among other actions); *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 194 (5th Cir. 2008) (affirming a filing injunction as to filings before federal agencies).  And guarding against abuses of that process through a judicially imposed filing injunction is especially appropriate where, as here, the jurisdiction of Article III courts is inextricably intertwined with the agency's performance of its adjudicative functions under a statutory scheme of administrative exhaustion.  *See* 18 U.S.C. § 1514A(b); *Daly*, 939 F.3d at 426-28.  Plus, in the administrative proceedings that gave rise to this very case, Judge Calianos expressly deferred to this Court to determine whether a filing injunction is warranted.  *See* Order at 2, *In re Rimini*, No. 2022-SOX-00018 (Dep't of Lab. Sept. 8, 2022). Accordingly, the Court additionally enjoins Rimini from filing new Sarbanes-Oxley whistleblower complaints with OSHA without first obtaining permission from the relevant tribunal.

## V.  Conclusion

For these reasons, the Court dismisses all of Rimini's causes of action.  The Court dismisses Rimini's Dodd-Frank and due process claims with prejudice, and dismisses his Sarbanes-Oxley and state law claims without prejudice.  If Rimini chooses to file a second amended complaint, he must do so within thirty days of the date this Opinion and Order is filed and comply with the conditions described above.  *See supra* III.B.4.

The Court also imposes a limited filing injunction against Rimini.  Under the terms of this injunction, Rimini may not pursue another action in this District or before OSHA against any of those entities named as Defendants in this case seeking relief for alleged violations of the whistleblower-protection provisions of Sarbanes-Oxley and/or Dodd-Frank without obtaining permission from the tribunal he seeks to proceed in.  In seeking permission, Rimini must file, in the forum he seeks to proceed in, his proposed complaint, a copy of this Opinion and Order, and a motion titled "Request For Leave to File Complaint Pursuant to Filing Injunction."  The motion shall set forth a concise description of the proposed claim and identify—by listing the caption, case number, and filing date—every prior action and complaint Rimini has brought in any forum against any of those entities named as Defendants in this case.  The motion shall also explain clearly how the proposed complaint adequately pleads the claim's substantive elements and, as relevant, jurisdictional prerequisites.

The action may not proceed unless and until the relevant tribunal grants the motion for leave to file.  A failure on Rimini's part to comply with any aspect of this injunction—including a failure on his part to demonstrate clearly through his accompanying motion that the proposed claim is both meritorious and jurisdictionally sound—shall constitute sufficient grounds for summary dismissal of the action.  And unless otherwise ordered by the relevant tribunal, Defendants shall have no obligation to respond to or otherwise move with respect to any new action covered by this injunction that does not comply with these requirements or as to which leave has not yet been granted.  The Court warns Rimini that commencing an action covered by this injunction without satisfying these conditions may result in sanctions or in him being held in contempt.

The Clerk of the Court is respectfully directed to terminate the motions at Docket Numbers 58 and 61.

SO ORDERED.

Dated: September 30, 2024
      New York, New York

_____
JOHN P. CRONAN
United States District Judge