UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
THOMAS RIMINI,                                                         :
                                                                       :
                                Plaintiff,                             :
                                                                       :
                -v-                                                    :    22 Civ. 7768 (JPC)
                                                                       :
J.P. MORGAN CHASE & CO. *et al.*,                                      :    OPINION AND ORDER
                                                                       :
                                Defendants.                            :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

This Court gave Thomas Rimini—an attorney proceeding *pro se* against his former employer, J.P. Morgan Chase & Co. ("JPMC"), and its affiliates—one last chance to properly plead his state law claims. Rimini then filed a Second Amended Complaint, but the pleading still fails to state any claims. So the Court dismisses Rimini's action with prejudice and without leave to amend.

## I. Background[1]

The Court assumes familiarity with this action and the extensive factual and procedural background underlying it. *See Rimini v. J.P. Morgan Chase & Co.*, No. 22 Civ. 7768 (JPC), 2024 WL 4354875, at *1-5 (S.D.N.Y. Sept. 30, 2024) (recounting this background). For present purposes, the following background suffices: Rimini has sued JPMC, J.P. Morgan Securities, LLC ("JPMS"), and J.P. Morgan Chase Bank, N.A. ("JPMCB"), alleging that Defendants gave HSBC

---

[1] The following facts, which are assumed true solely for purposes of this Opinion and Order, are taken from Rimini's Second Amended Complaint, Dkt. 97 ("SAC"), and the exhibits attached thereto. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

and other prospective employers negative employment references for him. *See* SAC at 1-2. Initially, Rimini brought whistle-blower retaliation claims under the Sarbanes-Oxley Act of 2002 and the Dodd-Frank Wall Street Reform and Consumer Protection Act, plus a claim for violations of due process; he also asserted common law claims for breach of contract, breach of the implied duty of good faith, defamation, slander, and tortious interference with business relations. *Rimini*, 2024 WL 4354875, at *1; *see* Dkts. 1 (Initial Complaint), 49 (First Amended Complaint). In response, Defendants filed a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and further moved for this Court to issue a broad filing injunction against Rimini. *See* Dkts. 18-19, 58-63.

This Court found that it "lack[ed] original jurisdiction over the Sarbanes-Oxley and state law claims." *Rimini*, 2024 WL 4354875, at *5-6. As for the state law claims, the Court explained that Rimini failed to plead any "independent basis for the Court to exercise subject matter jurisdiction over these claims, such as diversity jurisdiction": Rimini provided a Massachusetts address but did "not allege his place of domicile," he "fail[ed] to allege the state of incorporation and principal place of business of JPMC," and he further failed to "identify each of JPMS's members and their citizenships" along with "the location of JPMCB's main office." *Id.* at *6. Nor had it been "made clear in Rimini's pleadings whether the value of the relief he is seeking exceeds $75,000." *Id.* (citing 28 U.S.C. § 1332(a)). As the Court could not "exercise diversity jurisdiction over Rimini's state law claims as pleaded," it could "reach their merits only through an exercise of its supplemental jurisdiction." *Id.* And because Rimini failed to plausibly plead the federal Dodd-Frank and due process claims, *id.* at *7-8, the Court "decline[d] to exercise supplemental jurisdiction over Rimini's breach of contract, implied duty of good faith, defamation, slander, and tortious interference claims, and dismisse[d] those causes of action without prejudice," *id.* at *8-9.

2

The Court, however, granted Rimini leave to amend under very specific conditions. *Id.* at *9. As the Court explained, since it had "dismissed Rimini's state law causes of action for lack of subject matter jurisdiction and without reaching the merits of those claims," it would "provide Rimini one—and only one—opportunity to amend his pleading to bring his state law claims within the Court's original jurisdiction." *Id.* That opportunity was "limited to alleging diversity jurisdiction with respect to Rimini's state law causes of action," along with the chance to bolster "the substantive factual allegations in his existing pleadings" to "address the substantive challenges to his state law causes of action raised in Defendants' motion to dismiss." *Id.* The Court made clear that if Rimini chose "to replead, he must do so by filing a single, fully integrated complaint, with any relevant exhibits attached to that pleading," and that he could "not incorporate by reference any of his other filings or exhibits in this or other cases." *Id.* "And absent good cause shown, the Court [would] not allow Rimini to supplement his factual allegations through any later-filed affidavits, declarations, or other documents." *Id.* Finally, the Court warned Rimini that if he "fail[ed] to abide by any of these conditions, the Court may, either *sua sponte* or on Defendants' motion, strike Rimini's second amended complaint or any offending portions thereof." *Id.*[2]

On October 1, 2024, Plaintiff filed an interlocutory appeal of the Court's Opinion and Order, Dkt. 85, which the Second Circuit dismissed for lack of jurisdiction given the absence of a final

---

[2] The Court also issued a "narrower filing injunction" than the one Defendants requested, "limited to claims for retaliation in violation of Sarbanes-Oxley's and Dodd Frank's whistleblower-protection provisions." *Rimini*, 2024 WL 4354875, at *10-15. Under the terms of that injunction, "Rimini may not pursue another action in this District or before [the Occupational Safety and Health Administration] against any of those entities named as Defendants in this case seeking relief for alleged violations of the whistleblower-protection provisions of Sarbanes-Oxley and/or Dodd-Frank without obtaining permission from the tribunal he seeks to proceed in." *Id.* at *15. But the Court emphasized "that its decision to begin with a narrow filing injunction does not in any way relieve Rimini of his continuing obligation to avoid pursuing frivolous litigation against Defendants more broadly." *Id.* at *14.

3

order, Dkt. 101 (citing 28 U.S.C. § 1291). Plaintiff then filed a purported Second Amended Complaint on December 18, 2024, Dkt. 89, which the Court struck on January 7, 2025, Dkt. 94. As the Court explained, Rimini "fail[ed] to comply . . . with the conditions for amendment outlined in the Court's September 30, 2024, Opinion and Order." *Id.* Among other failures, Rimini did "not allege the citizenships of J.P. Morgan Securities, LLC or J.P. Morgan Chase Bank, N.A., or the amount in controversy," and he purported to "incorporate [his] prior complaints by reference." *Id.* But the Court allowed Rimini "leave to refile a version of the Second Amended Complaint that complies with the conditions outlined in the Court's Opinion and Order," so long as Rimini reviewed that Opinion and Order's "specific requirements that any further amended complaint must satisfy" and filed an affidavit attesting to having reviewed those requirements. *Id.*

Rimini filed his Second Amended Complaint on February 10, 2025, Dkt. 97, and the required affidavit on February 20, 2025, Dkt. 100. In that two-page Complaint, Rimini alleges that to his understanding, "Defendants are incorporated in Delaware, Ohio and New York," while he is "a resident of Massachusetts." SAC at 1. And according to the Second Amended Complaint, the "financial harm caused by Defendants in this matter exceeds $75,000." *Id.* Liberally construed, Rimini asserts in the Second Amended Complaint three causes of action under New York state law: breach of contract, tortious interference with business activity/prospects, and libel. *Id.* at 1-2.[3] As for his breach-of-contract claim, Rimini alleges that Defendants breached a 2008 settlement agreement (the "Settlement Agreement") by stating to HSBC that he was "ineligible for

---

[3] While Rimini purports to amend his Complaint "to include breach of contract and all other actions allowable under New York State law, including interference with business activity/prospects and libel," SAC at 1, he does not specifically plead his prior claims for breach of the implied duty of good faith, defamation, and slander. Having warned Rimini multiple times that he may not incorporate his prior Complaints by reference, *see supra*, the Court declines to consider those claims as abandoned.

4

reemployment." *Id.*; *see also id.*, Exh. C ("Settlement Agreement").  Rimini also alleges that this "statement is untrue and libelous and interferes with [his] business prospects."  SAC at 2.  (Rimini also claims that Defendants "more recently" repeated this allegedly "untrue statement[]" to unidentified "prospective employers."  *Id.*)  As Rimini sees it, the statement that he is ineligible for reemployment has "caus[ed] [him] to take a job outside of [his] industry path, where before [he] was only a volunteer and where there was an extremely extensive background check, and otherwise causing sustained unemployment outside of [his] industry path—which [he] started while in college."  *Id.*

On March 21, 2025, Rimini requested that this Court appoint him counsel.  Dkt. 107.  The Court denied that request on March 24, 2025, explaining that neither Rimini's request to appoint counsel "nor the Second Amended Complaint satisfy a threshold showing of 'likely merit.'"  Dkt. 108 (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989)).  The Court further ordered "every party in this case (including Mr. Rimini himself)" to "file a disclosure statement pursuant to Federal Rule of Civil Procedure 7.1(a)(2) that identifies the parties' respective citizenship(s).  Mr. Rimini's Rule 7.1(a)(2) disclosure statement shall identify his state of domicile, not residence."  *Id.*

Defendants filed their disclosure statement on March 31, 2025.  Dkt. 109.  As stated, "JPMC is incorporated in Delaware and its headquarters are located in New York, and, therefore, is a citizen of both Delaware and New York."  *Id.* at 1.  JPMS, meanwhile, "is a limited liability company" whose "headquarters are located in New York" and whose "sole member is J.P. Morgan Broker-Dealer Holdings Inc., which is incorporated in Delaware"—meaning that JPMS "is a citizen of both Delaware and New York."  *Id.* at 1-2.  And "JPMCB is a national banking association, with its main office in Ohio . . . and, therefore, is a citizen of Ohio."  *Id.* at 2.  Rimini eventually filed

his own disclosure statement on April 10, 2025, asserting that he is "a current domiciliary of Massachusetts." Dkt. 111.

Defendants moved to dismiss Rimini's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on May 5, 2025. Dkts. 113, 114 ("Motion"). Plaintiff failed to file his opposition by the due date of May 26, 2025, *see* Dkt. 112 (Order setting that date), and Defendants filed a short reply pointing out that fact on June 2, 2025, Dkt. 115. This Court issued an Order requiring Rimini to "file a letter stating whether he intends to file an opposition to Defendants' motion and, if so, whether good cause exists to excuse his failure to do so by the deadline set by the Court." Dkt. 116. The Court cautioned Rimini "that if he fails to file an opposition or respond to th[at] order by June 11, 2025, the Court will treat Defendants' motion as unopposed, meaning that the Court will consider whether to grant Defendants' motion without the benefit of opposing papers." *Id.* On June 11, Rimini responded by stating only that he "oppose[d] Defendants' motion" but did not have the "time" to file a fulsome opposition, and that this case should simply proceed to "full discovery [for him] to fully make claims." Dkt. 117.

## II. Jurisdiction

Before turning to the merits of Defendants' motion to dismiss, the Court must consider whether and to what extent it has jurisdiction to hear this case. *See United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) ("Subject matter jurisdiction is a 'threshold question that must be resolved . . . before proceeding to the merits.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998))); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Rimini asserts that the "Court has diversity jurisdiction" under 28 U.S.C. § 1332. SAC at 1. In support of diversity jurisdiction, the Second Amended Complaint alleges that "Defendants

are incorporated in Delaware, Ohio and New York," while he is "a resident of Massachusetts," and that the "financial harm caused by Defendants in this matter exceeds $75,000."  *Id.*  Defendants correctly point out that the "Second Amended Complaint still fails to specify (i) Rimini's place of domicile, (ii) the principal place of business/headquarters of any Defendant, (iii) JPMS's members and their citizenships, and (iv) . . . the location of JPMCB's main office."  Motion at 4; *see also Rimini*, 2024 WL 4354875, at *6 (describing these requirements for diversity jurisdiction).  They thus argue that Rimini's claims fail because he "fails to adequately allege diversity jurisdiction" and "has not requested leave to amend after Defendants provided him information needed to properly plead diversity jurisdiction."  Motion at 3-4.

Given the record, the Court disagrees that Rimini's technical pleading failure requires dismissal for lack of diversity jurisdiction.  As the Second Circuit has explained, "[a]lthough a plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter jurisdiction, its failure to do so does not always require that the action be dismissed, for the actual *existence* of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements."  *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (internal quotation marks and citation omitted).  Indeed, "when the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties," courts "may simply 'deem the pleadings amended so as to properly allege diversity jurisdiction.'"  *Id.* (quoting *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997)).  As supplemented, the whole record here undisputedly establishes diversity of citizenship: after filing the Second Amended Complaint, Rimini filed a statement asserting that he is "a current domiciliary of Massachusetts," Dkt. 111, while Defendants' corporate disclosure statement under

7

Federal Rule of Civil Procedure 7.1 asserts that JPMC and JPMS are "citizen[s] of both Delaware and New York" and JPMCB "is a citizen of Ohio," Dkt. 109 at 1-2.  Because the record shows the "complete diversity" between the parties necessary to establish subject matter jurisdiction under 28 U.S.C. § 1332, *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014), the Court "deem[s] the pleadings amended so as to properly allege" complete diversity, *Canedy*, 126 F.3d at 103.

The Second Amended Complaint also does enough to adequately allege the amount in controversy, which must exceed $75,000, *see* 28 U.S.C. § 1332(a).  A "plaintiff invoking federal jurisdiction" need only "demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied."  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).  There is thus a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," which a "defendant may rebut . . . by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums."  *Id.* (internal quotation marks omitted).  Here, Rimini alleges that the "financial harm caused by Defendants in this matter exceeds $75,000," which is supported by the factual allegation that Defendants' purported misdeeds caused Rimini to experience "sustained unemployment outside of [his] industry path."  SAC at 1-2. Defendants make no effort to rebut the amount-in-controversy allegations, let alone show to a legal certainty that the jurisdictional minimum cannot be met.  *See* Motion at 3-4 (pointing out the Second Amended Complaint's failure to allege complete diversity but not challenging the asserted amount in controversy).  The Court thus finds complete diversity between the parties and an amount in controversy exceeding $75,000, such that diversity jurisdiction exists.  *See* 28 U.S.C. § 1332.

### III. Defendants' Motion to Dismiss

#### A. Legal Standard

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

Plus, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted). But this liberal treatment is not boundless. *See Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) ("[T]he liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (internal quotation marks omitted)). And while he appears *pro se*, Rimini graduated from The George Washington University Law School in 2001, and has represented

9

himself in all of the actions he has initiated since his first lawsuit against Defendants in 2012. *Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC), Dkt. 72 at 25; *Rimini v. J.P. Morgan Chase & Co.*, No. 158195/2012 (N.Y. Sup. Ct. Nov. 20, 2012). As the Court noted in one of its prior opinions in another case brought by Rimini against JPMC:

> A district court typically affords special solicitude to a *pro se* litigant, which can "consist of liberal construction of pleadings, motion papers, and appellate briefs." But "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented. The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all."

*Rimini v. J.P. Morgan Chase & Co.*, No. 21 Civ. 7209 (JPC), 2024 WL 809890, at *3 (S.D.N.Y. Feb. 27, 2024) (citation modified) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010)); *accord Manchanda v. Reardon*, No. 23 Civ. 9292 (JPC), 2024 WL 382116, at *4 (S.D.N.Y. Feb. 1, 2024)). Rimini's status as a lawyer himself, along with his extensive litigation experience in various courts and agencies dating back over a decade, cuts against the notion that he is entitled to "special solicitude" as a *pro se* litigant for purposes of this motion to dismiss.

## B. Analysis

Rimini pleads claims under New York State law[4] for breach of contract, tortious interference with business relations, and libel. SAC at 1-2. His allegations as to all three fall short.

### 1. Breach of Contract

According to Rimini, "Defendants breached" the Settlement Agreement by stating "to HSBC" that he is "ineligible for reemployment," while the Agreement provides that "only specific language be used in reference to [his] employment by Defendants." *Id.* "Under New York law, a

---

[4] The Settlement Agreement also has a choice-of-law clause providing that it "will be governed by the laws of the State of New York and the parties will submit to the jurisdiction of the state and/or federal courts located within the State of New York for the resolution of any dispute which may arise hereunder." Settlement Agreement § 8.

breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).

As Defendants point out, *see* Motion at 4-5, there can be no breach-of-contract claim against JPMS and JPMCB because they are not parties to the Settlement Agreement. *See* Settlement Agreement § 2 (explaining the agreement of "the parties" "[i]n exchange for the promises and payments made by JPMC and Rimini as outlined in this Settlement Agreement"); *see also id.* at 9 (showing that of all three Defendants, only JPMC was a signatory to the Settlement Agreement). "Clearly a breach can only occur when one is under an obligation to perform in the first instance," meaning that where a defendant "was not a named party to the Agreement . . . , as a matter of law, [it] cannot be held accountable for the alleged breach." *Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978) ("Before defendant may be held accountable for the breach of a contract, it must be demonstrated that he was a party thereto."); *accord Victory State Bank v. EMBA Hylan, LLC*, 95 N.Y.S.3d 97, 101 (2d Dep't 2019) ("One cannot be held liable under a contract to which he or she is not a party."). So Rimini's contract claim against JPMS and JPMCB fails as a matter of law.

As for JPMC, Rimini fails to adequately allege that it breached the Settlement Agreement. Under Section 2(g) of the Agreement, "JPMC agrees that it will respond to inquiries from potential future employers of Rimini by identifying only the position(s) held by Rimini and the dates of Rimini's employment with JPMC, consistent with JPMC's current policies regarding such communications." Settlement Agreement § 2(g). While Rimini alleges that *someone* went beyond the scope of this provision by stating to HSBC and other prospective employers that he was ineligible for reemployment, he fails to specify who—just that "Defendants" did so. SAC at 1-2.

But that unspecified person could just as easily have been from Defendants JPMS and JPMCB—non-parties to the Settlement Agreement—as the person could have been from JPMC. Without more, Rimini fails to state a breach-of-contract claim against JPMC. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).[5]

### 2. Tortious Interference with Business Relations

Rimini further claims that, by stating that he is "ineligible for reemployment," Defendants have "interfere[d] with [his] business prospects." SAC at 2. "To prevail on a claim for tortious interference with business relations—also known as tortious interference with prospective economic advantage—under New York law, a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation modified).

Among other pleading deficiencies, Rimini fails to allege that Defendants acted with a wrongful purpose or used improper means. As the Second Circuit has explained, "the 'wrongful

---

[5] Rimini further alleges that JPMC breached the Settlement Agreement "[b]y stating to this Court publicly" that he is ineligible for reemployment. SAC at 1-2. But the Agreement's terms apply only to JPMC's "respon[se] to inquiries from potential future employers of Rimini," Settlement Agreement § 2(g), not in papers before this or any Court. So Rimini cannot rely on JPMC's statements in this litigation to establish a breach of contract, even setting aside the existence of any litigation privilege. *See* SAC at 2 ("Defendants' statement is not covered by litigation privilege because in making the statement, it submitted to this Court an unrelated additional matter."); *see generally Front, Inc. v. Khalil*, 28 N.E.3d 15, 18 (N.Y. 2015) ("[A]bsolute immunity from liability for defamation exists for oral or written statements made by attorneys in connection with a proceeding before a court when such words and writings are material and pertinent to the questions involved." (internal quotation marks omitted)).

12

means' element sets a high bar." *Id.* at 262. Specifically, "a claim for tortious interference with business relations requires a plaintiff to show, 'as a general rule,' that 'the defendant's conduct amounted to a crime or an independent tort.'" *Id.* (citation modified) (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)). And yet "the fact that plaintiff's former supervisor 'may have given plaintiff a negative job reference or did not believe plaintiff to be a qualified candidate for the position d[oes] not constitute interference by wrongful means.'" *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012) (quoting *Miller v. Mount Sinai Med. Ctr.*, 733 N.Y.S.2d 26, 27 (1st Dep't 2001)). Rimini's allegations fall squarely into that category. *See* SAC at 1-2 (alleging "statements to HSBC and more recently through untrue statements to prospective employers that [he is] ineligible for reemployment"). At bottom, Defendants' statement about Rimini's ineligibility for reemployment does "not amount to 'the sort of egregious wrongdoing that might support a tortious interference claim in the absence of an independently unlawful act or evil motive.'" *16 Casa Duse*, 791 F.3d at 263 (citation modified) (quoting *Carvel Corp.*, 818 N.E.2d at 1102-03). So Rimini's tortious interference claim fails, too.

### 3.  Libel

Finally, Rimini alleges that Defendants' statements to HSBC on December 10, 2021, and "more recently . . . to prospective employers" that he is "ineligible for reemployment" are "libelous." SAC at 2. "New York requires a libel plaintiff to prove five elements: (1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). But Rimini fails to allege a written statement, whether to HSBC or to the unidentified "prospective employers." *See Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 295

13

(S.D.N.Y. 2023) ("Claims for defamation through statements that are spoken aloud rather than published in writing ordinarily sound in slander rather than libel."). And even were he to allege such a statement, he has not pleaded why it is false other than through the conclusory allegations that it is "false" and "untrue." SAC at 1-2. Indeed, the Settlement Agreement makes clear that Rimini's "employment relationship with JPMC [and] its affiliates . . . has been permanently and irrevocably severed and that he shall not seek . . . reemployment . . . with . . . [JPMC]" or its affiliates "at any time in the future," and that the Agreement is "a complete bar to any . . . reemployment." Settlement Agreement § 2(a). Yet "[u]nder New York law, it is fundamental that truth is an absolute, unqualified defense to a civil defamation action," such that "[i]f an allegedly defamatory statement is substantially true, a claim of libel is legally insufficient and should be dismissed." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (citation modified), *aff'd*, 807 F.3d 541; *accord Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242-43 (2d Cir. 2017). Defendants' alleged statement—written or otherwise—that Rimini is ineligible for reemployment with them is at least substantially true under the terms of the Settlement Agreement, such that Rimini's libel claim fails.

  4.  **Denial of Leave to Amend**

Under the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Rimini has already amended his pleading twice and has not requested leave to file an additional amended complaint. Indeed, granting leave to amend would be allowing not just "a

'third bite at the apple,' which courts in this district routinely deny"—but still a fourth bite. *Binn v. Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020). Leave to amend is thus denied "given the previous opportunities to amend" that Rimini has failed to capitalize on. *Ruotolo*, 514 F.3d at 191. The Court accordingly dismisses Rimini's claims with prejudice and without leave to amend.

## IV. Conclusion

For the above reasons, the Court grants Defendants' motion to dismiss for failure to state a claim, dismissing Plaintiff's remaining state law claims with prejudice and without leave to amend. The Clerk of Court is respectfully directed to enter judgment in Defendants' favor and to close this case.

SO ORDERED.

Dated: November 3, 2025
      New York, New York

                                    JOHN P. CRONAN
                                United States District Judge